L. L. & G. Railroad Co. v. Charles Coffin, *Treas'r, &c.*

Osage Ceded Lands; *Claims of Railroad Companies, under Land Grants, Not Sustained.* The question in this case—the claim of the plaintiff in error to certain lands in the Osage Ceded Tract—being one whose ultimate decision belongs to the supreme court of the United States, and such question having been decided by that court, must also be decided by this court in the same way, adversely to the claim of the plaintiff in error.

*Error from Neosho District Court.*

THIS action was commenced in April 1872, in the district court of Neosho county, by the *Leavenworth, Lawrence & Galveston Rld. Co.*, as plaintiff, against *Thomas Leahy*, the then treasurer of Neosho county, to enjoin the collection of taxes for the year 1871 which had been assessed and levied on about 125 sections, or 80,000 acres, of the Osage Ceded Lands lying in said Neosho county, which lands said *Railroad Company* claimed to own in fee, but which plaintiff claimed were not subject to taxation for said year 1871. Plaintiff claimed that it had received said lands under the act of congress of March 3d 1863 granting lands to the state of Kansas to aid in the construction of certain roads and telegraphs, and the act of the legislature of the state of Kansas, approved February 9th 1864, (Laws of 1864, p. 149; Gen. Stat., p. 885,) and by virtue of the treaty between the United States and the Great and Little Osage Indians, concluded 29th September 1865, and proclaimed January 21st 1867, and by virtue of constructing its railroad through said lands to the south line of the state of Kansas—but claimed that it did not so construct such road to the satisfaction of the Secretary of the Interior, and the acceptance of the Governor of Kansas, until December 1871, and that the patents from the state of Kansas to plaintiff for said lands were not executed until March 1872. The case came here on appeal from an order of the district court sustaining a demurrer to

plaintiff's petition. (*L. L. & G. Rld. Co. v. Leahy*, 12 Kas. 124, decided at the July Term 1873.) This court reversed the order of the district court; but in regard to the real merits of the controversy, as disclosed by the facts alleged in the petition, the court (12 Kas. 126) said:

"There is nothing in all this which tends to show that these lands were taxable in 1871, or to limit the previous general allegation [in the petition] that they were not subject to taxation for that year. It does present however a very serious question as to *whether it does not show that the company has no title whatever to these lands*, and therefore has no right to maintain this action. It does not appear from this petition whether these lands are all within, or all without, or part within and part without, the limits of the tract formerly owned by the Osage Indians, and covered by the provisions of the treaty of 1865. If they are *without those limits*, then it is easy to see how title could pass by the grant of congress, the acceptance by the state, and the construction of the road. *If they are within*, then it may not be so easy to see how any title could thus pass to the company. Outside of this case, (for counsel are silent in their briefs as to the effect of the treaty provisions on the question of title, and in fact ignore the treaty entirely,) we are aware that a grave controversy is pending as to the title of these lands. We know as a matter of public history, as well as from the petition, that the secretary of the interior has declared that title to lands covered by that treaty did pass to plaintiff on the completion of its road; and *we do not decide that it did, nor that it did not*. We shall not decide a question of that importance until it is fairly before us." *

[* REPORTER'S NOTE.—The brief opinion in the case in the text, *The L. L. & G. Railroad Co. v. Coffin, Treasurer, &c.*, renders it unnecessary to insert counsels' briefs wherein the whole merits of the case are discussed at length. But the history of the legal contests with respect to the title and conflicting claims set up to said Osage Ceded Lands, is hardly completed with the mere publication of the final decision in the *Coffin* case. A portion of this history, and a discussion of many of the questions involved, will be found in the reported cases of *Wood v. M. K. & T. Rly. Co.*, 11 Kas. 323, *L. L. & G. Rld. Co. v. Leahy, Treasurer, &c.*, 12 Kas. 124, and *Lownsberry v. Rakestraw*, 14 Kas. 151, heretofore decided in this court. In the *Wood case* in 11 Kas., the title of the Railroad Companies to any of said Osage Ceded Lands, either under the act of congress of March 3d 1863, the Osage treaty of 1865-1867, or the act of the state legislature, and patents issued thereunder, was denied by counsel for Wood, and in the *Leahy case*, in 12 Kas., it was questioned by the court; and in the case in the text, the counsel for Coffin, Mr. HUTCHINGS, submitted an elaborate brief, in which, in reference to said act of March

The case being remanded, and the term of office of *Leahy,* the former treasurer, having expired, *Charles Coffin,* his successor in office as county treasurer, was substituted as defendant. And thereafter, at the April Term 1874, the action was submitted to the district court upon an agreed statement of facts The district court held that under the agreed facts, and the pleadings, the plaintiff did not have any title to or interest in the lands, and consequently could not maintain the action; and judgment was rendered against the plaintiff for costs. To reverse this judgment the plaintiff brought the case to this court. The petition in error was filed May 21st

3d 1863, granting certain lands to the state of Kansas to aid in the construction of certain railroads, and under which act the *Railroad Company* claims title, he says:

"At that time the land described in the petition was a part of a large tract reserved under the treaty of June 2d 1825, (7 U. S. Stat. at Large, 240,) for the use and occupancy of the Osage Indians so long as they might choose to occupy the same. These Indians were entitled to the perpetual and exclusive use of this reservation. * * * It will scarcely be contended that the government could have granted what it did not at the time possess; and it has been decided by the highest authority that a legislative grant does not amount to a warranty. *Rice v. Railroad,* 1 Black, 359; *Polk's Lessee v. Wendell,* 9 Cranch, 99; 5 Wheaton, 33; *Patterson v. Winn,* 11 Wheaton, 388. The lands embraced in the treaty of June 2d 1825 were reserved to the Osage tribe of Indians forever, if they chose to occupy them. Could this legislative grant then, made in 1863, be construed to anticipate and convey any title that the government might obtain in the contingency that the Osage Indians in some indefinite future might choose to occupy the lands no longer? The plaintiff (the L. L. & G. Railroad Co.) in the numerous contests concerning these lands has attempted to anchor its claim to a grant through this reservation to some opinions of Attorneys-General BLACK and CUSHING, to the effect that such a grant carries the land subject to the Indians' right of occupancy. These opinions would seem to be in conflict with the authorities just cited, and also with the well-established doctrine 'that whensoever a tract of land shall have once been legally appropriated for any purpose, from that moment the land thus appropriated becomes severed from the mass of public lands, and no subsequent law, or proclamation, or sale, would be construed to embrace it, or to operate upon it, although no reservation were made of it.' (*Wilcox v. Jackson,* 13 Peters, 498; *Spalding v. Martin,* 11 Wis. 271.) However this may be, we regard it unnecessary to examine or make any refinements upon the possible difference between *military* reservations (to which the last cases refer) and *Indian* reservations like that made by the treaty of June 2d, 1825; (though as impliedly denying any difference, see *Wolcott v. Navigation Co.,* 5 Wall. 681; *Williams v. Baker,* 17 Wall. 144;) for in the act of March 3d 1863 there is an *express* reservation of these lands, which puts the question of the legislative intendment beyond a doubt. This reservation is in the form of a proviso to the first section and follows closely the *granting-clause* of the act."

He then examines the Osage Treaty of 1865–1867, and contends that said treaty does not warrant the claim set up by the railroad companies, that the title of said companies to said lands under the act of March 3d 1863 is "recognized" by said treaty. And he argues, that as the act of March 3d 1863 by its terms excludes the idea of a grant through the Osage Ceded Lands, neither the treaty-making power, nor a subsequent congress, could by negotiation or enactment "recognize" or construe such act into a grant, unless such subsequent enactment or negotiation would itself amount to a grant independent of the act of 1863—and he denies that the treaty of 1865, the joint resolution of April 10th 1869, (16 U. S. Stat. 55,) or the act of April 19th 1871, (authorizing the L. L. & G. Railroad Co. to relocate a portion of its road south of Thayer,) or all three together, constitute a grant. And this was the opinion generally entertained by the members of the bar and district judges in southern Kansas, for a long time before any action or proceeding was instituted in the United States courts to contest the claims set up by the railroad companies to said Osage Ceded Lands.

1874, but the hearing was postponed from term to term, by consent, pending the determination of the cases in the United States courts referred to in the opinion.

*Solon O. Thacher*, for plaintiff.

*C. F. Hutchings*, for defendant.

The opinion of the court was delivered by

· BREWER, J.: The principal question in this case is, as to the title of the plaintiff in error to certain lands in the Osage Ceded Tract. This question having been recently decided by

As early as 1871 the settlers on the Osage Ceded Lands in Neosho and Labette counties organized as the "Settlers' Protective Association," for the purpose of contesting the validity of the alleged title of the M. K. & T. Railway Co., and the L. L. & G. Railroad Co., to said lands. Said association was active in prosecuting or defending on behalf of the settlers all actions between settlers and the railroad companies concerning said lands. Public meetings were held. The state legislature, congress, and the executive government of the United States, were petitioned or memorialized to grant relief to the settlers, until finally, on the 19th of January 1874, Hon. GEORGE H. WILLIAMS, Attorney General of the United States, issued an order to the District Attorney of the U. S. for the District of Kansas, "to commence suits in the name of the United States against the L. L. & G. Railroad Co. and the M. K. & T. Railway Co. for the purpose of testing the validity of certain grants which said companies allege have been made to them of lands known as the 'Osage Ceded Lands' in the State of Kansas, and for the purpose of obtaining the cancellation of patents or other evidence of title held by said companies to said lands." Upon receipt of this order, and on the 25th of February 1874, Hon. GEORGE R. PECK, U. S. District Attorney for Kansas, for the government, with Hon. WILSON SHANNON of Lawrence, and Messrs. McCOMAS & McKEIGHAN of Fort Scott, as counsel for the settlers, commenced two actions in the United States circuit court, in the name of *The United States* as complainant, in one of which *The Leavenworth, Lawrence & Galveston Railroad Company* was defendant, and in the other of which *The Missouri, Kansas & Texas Railway Company* was defendant. [Two days after these suits were commenced the Kansas legislature appropriated $2,500 "to the treasurer of the Settlers' Protective Association," for the purpose of aiding the settlers to test the validity of the title claimed by said railroad companies; Laws of 1874, p. 13.] Hon. SOLON O. THACHER appeared for the *L. L. & G. Rld. Co.*, and Hon. T. C. SEARS for the *M. K. & T. Rly. Co.* They submitted substantially the same defense, claiming title under said act of 3d March 1863, and treaty of 1865-67, and the provisions of the act of the legislature of the state of Kansas, passed in 1864, (Gen. Stat., p. 885.) The patents to the M. K. & T. Rly. Co. were issued in June 1870; those to the L. L. & G. Rld. Co. were issued in March 1872. Said actions were so instituted and prosecuted to set aside and annul the certificates from the Secretary of the Interior, and said patents issued to said railroad companies by the Governor of Kansas, and to perpetually enjoin said railroad companies respectively from setting up any claim, either legal or equitable, in or to any of the lands situate and being within the boundaries of said Osage Ceded Lands. The cases were argued before Justices MILLER and DILLON, at the June Term 1874 of the U. S. Circuit Court, (two months *subsequent* to the decision made by Judge GOODIN in the Coffin case.) On the 22d of August 1874, the decision of Justices MILLER and DILLON, in favor of the settlers' claim, and against the title of the railroad companies, was announced. From this decision the railroad companies appealed to the Supreme

the supreme court of the United States, (the court of last resort upon this question,) adversely to the plaintiff in error, it is sufficient for us to direct an affirmance of the judgment below in accordance with the conclusion reached by that court. Judgment affirmed.

All the Justices concurring.

Court of the United States, and the cases were there heard and submitted at the October Term 1875. The decision of that court however was not announced until April 10th 1876. The decision of the circuit court was *affirmed.* The opinions of the court were delivered by Mr. Justice DAVIS, five Justices concurring. (Justices FIELD, SWAYNE, and STRONG, dissented.) The majority opinions are published in full in the Central Law Journal of June 23d 1876, pp. 403, 407. The propositions decided are as follows:

1. *Cancellation of Patents.*—Where patents have been issued by the officers of the government without authority, the United States may file a bill in equity and maintain such suit in its own name to set them aside.

2. *Construction of Land Grants.*—Grants of lands by congress will be construed strictly, and will not extend beyond the meaning and intent expressed in the act. If a grant admit of different meanings, that will be accepted which is more favorable to the grantor.

3. ——— *Words of Grant.*—The words, "there be and is hereby granted," vested a present title in the state of Kansas, though a survey and location were necessary to give precision to it, and attach it to any particular tract. After the location of the road, the grant became certain, and by relation had the same effect upon the selected parcels as if they had been specially named at the date of the act.

4. *Rights of Indians.*—The Indians have the unquestionable right of the lands they occupy until that right is extinguished by voluntary cession to the government.

5. *Osage Lands.*—On a construction of the treaty of the United States with the Osage Indians of June 2, 1825, and the subsequent treaty with the same Indians of January 21, 1867, and the act of congress of March 3, 1863, granting lands to the state of Kansas to aid in the building of railroads, *Held,* that lands which, under the said treaty of 1825, had been set apart and reserved for the said Indian tribe, and which was in their actual use and occupancy, did not pass under the said railroad grant. Congress did not intend that this grant should reach the Osage lands, further than to allow the company to construct its line of road through them.

6. *Innocent Purchases.*—That money has been advanced on the faith of the title, cannot be considered. The title to land is not strengthened by giving a mortgage upon it; nor can the fact that a mortgage has been given throw any light on the title of the mortgagor.